UNITED STATES ex rel. BARTALINI v. MITCHELL.

(District Court, E. D. New York. February 27, 1918.)

**1. ALIENS ⊂⊃68—DECLARATION OF INTENTION.**

While an alien, to take advantage of his declaration of intention must file his petition for naturalization within seven years, yet a failure to file a petition within such period does not, unless the alien leaves the country, raise a presumption that he has resumed his old and interrupted allegiance to a foreign power.

**2. ARMY AND NAVY ⊂⊃20—SELECTIVE DRAFT ACT—DECLARANT ALIENS.**

An alien, who had taken out his first papers, but had allowed seven years to elapse, and thus lost the right to become at once a citizen of the United States, must, having remained in the country, be presumed a declarant alien, subject to military service, within the terms of Selective Draft Act, May 18, 1917, c. 15, 40 Stat. 76; there being nothing in the terms of the act to indicate that Congress intended to limit the draft to those who had become declarants within seven years, and so were entitled to immediately petition for admission to citizenship.

**3. HABEAS CORPUS ⊂⊃16—REMEDY—SCOPE.**

Habeas corpus is the appropriate remedy to test whether a quasi judicial body, as exemption boards created by the Selective Draft Act, are acting without the scope of their jurisdiction.

**4. ARMY AND NAVY ⊂⊃20—SELECTIVE DRAFT ACT—DETERMINATION OF EXEMPTION BOARDS.**

The Selective Draft Act, after providing in section 1 for increase of the army by draft and in section 2 that the draft shall be based upon liability to military service of all male citizens, or male persons not alien enemies, who have declared their intention to become citizens between prescribed ages, declares in section 4 that the decision of the district exemption board shall be final, unless overruled on appeal to the President. Section 5 requires all male persons within the prescribed ages to register, and declares that they are subject to draft, unless exempted or excused as provided. *Held* that, as section 4 provides the means for exemption, the determination of the local and district boards, certifying one into the service as a declarant alien, is final, where the question was raised, unless such alien was deprived of a fair hearing, even though he was not in fact a declarant alien.

Habeas Corpus. Petition by the United States, on the relation of Omero Bartalini, for a writ of habeas corpus against Capt. Cornelius Von E. Mitchell, of Battery F, 305th Field Artillery, or any person in charge of said Battery, Camp Upton, Suffolk County, Long Island. Writ dismissed, and relator remanded.

Bennet & Cooley, of New York City, for petitioner.

Melville J. France, U. S. Atty., of Brooklyn, N. Y., for respondent.

CHATFIELD, District Judge. A writ of habeas corpus has been issued under the authority of Angelus v. Sullivan, 246 Fed. 54, ——

C. C. A. ——, upon which Bartalini has been produced, return filed, and argument had upon the record. None of the facts have been traversed.

[1, 2] Bartalini is a Russian alien, who took out his first papers, but allowed seven years to elapse, and thus lost the right to become at once a citizen of the United States. The record shows that he notified the local board of these facts, but was certified for duty as a declarant. He took an appeal, which was dismissed, and was at Camp Upton when the writ of habeas corpus was issued.

The decision of the Supreme Court in the Case of Antonio Morena, 245 U. S. 392, 38 Sup. Ct. 151, 62 L. Ed. ——, January 7, 1918, establishes the proposition that Bartalini could not become a citizen by the use of his old declaration of intention. It is contended, therefore, on his behalf, that Bartalini is an alien, and not a declarant, within the meaning of those terms under the Selective Service Law. But such a conclusion would in many instances defeat the evident purpose of the law. Bartalini was of the age required to register, and as a matter of fact he had declared his intention to become a citizen. The basis of the seven-year limitation upon the use of first papers is not a presumption that the person neglecting to become a citizen has resumed his old and interrupted allegiance to a foreign power. This presumption happens only if the alien has also left the United States. But a declarant must make use of his papers within the seven years solely because Congress has enacted a statute which places that limit upon the use of the old declaration of intention in filing a petition to become a citizen. During all of these seven years he is declarant. Thereafter, and so long as he is in this country, he remains a declarant, since he is in the position of having stated his intention to become a United States citizen and to give up his former allegiance. He may prove the continuation of this intention by filing a new declaration. But he does not at the end of seven years resume, in all respects, the national rights of those who have never filed such a declaration.

Legislation has frequently been proposed extending the seven-year period, and in many circuits in the United States those who held declarations of intention filed under the former law could, until the Morena decision, become citizens at any time, upon making application. There is nothing in the Selective Service Act to indicate that Congress intended to limit the draft to those who had become declarants within seven years, and, on the contrary, the language used expresses the intention of Congress to include all males, not alien enemies, who were not still plainly insisting upon their status as aliens before the passage of the Draft Law.

The question of drafting aliens who have filed a declaration of intention might be raised as the basis for the discussion of treaty provisions, but in the meantime Congress certainly has the right to include such a man in the Draft Law. This court will not hold that a man who has severed his relations by declaring his intention to renounce his allegiance to his former sovereign, and who may even during the war reaffirm that intention, so as to escape military service for his native land, can successfully resist the act of Congress, which asserts rights on the part of the United States under which he can be com-

pelled to do his duty for the United States until and unless his former sovereign changes those rights by the negotiation of a treaty.

[3, 4] But, if not considered a declarant, the relator cannot be discharged, because of the provisions of the Selective Service Law. It has been held in a number of cases under the Selective Draft Act that the provisions of section 4, making the decision of the district board final unless overruled on direct appeal to the President, are sufficient to show an express direction of Congress that the machinery of the Draft Law is to be carried out in accordance with the language of the statute, and in no other way.

In Angelus v. Sullivan, supra, this matter has been discussed at length. It was there held that a court could inquire, by way of habeas corpus or certiorari, into the proceedings of the bodies created by the Draft Law, only to the extent of seeing whether they were acting entirely outside the law by which they were created; in other words, whether they were acting without jurisdiction. It is evident that a determination by a body, which is in fact acting without jurisdiction, that the subject-matter as to which action is being taken is properly before that body, and that its jurisdiction extends thereto, can be tested by habeas corpus.

A number of cases are cited in the Angelus decision to that effect. But it was held in the Angelus Case, as in U. S. ex rel. Koopowitz v. Finley (D. C.) 245 Fed. 871 (Mayer, J., S. D. N. Y.), Ex parte Hutflis (D. C.) 245 Fed. 798, U. S. ex rel. Cubyluck v. Bell (D. C.) 248 Fed. 995 (Veeder, J., E. D. N. Y.), and U. S. ex rel. Troiana v. Heyburn (D. C.) 245 Fed. 366 (Dickinson, J., E. D. Pa.), that a determination by the local and district boards on any question of fact or of law, within the scope of their jurisdiction, was final except on appeal to the President. It was also held in these cases, and particularly in the Koopowitz Case, that failure to follow the procedure established by the Draft Law was equivalent to a waiver of the right to seek exemption. It was also held that the word "exemption" included a claim of absolute exception from the class of those liable to be drawn for military service.

The Selective Service Law does not set forth these various provisions in sequence. Section 1 authorizes the President to raise the increased forces of the army in various ways, one of which is by draft. Section 2 provides that this draft shall be based upon liability to military service of all male citizens, or male persons, not alien enemies, who have declared their intention to become citizens, between the ages of 21 and 30 years, both inclusive. But thereafter the law provides, in section 5, that all male persons between the ages of 21 and 30, both inclusive, must register. This provision establishes a class which includes alien enemies and aliens who have not filed a declaration of intention. These are "subject to draft into the forces hereby authorized, unless exempted or excused therefrom as in this act provided."

In order to find what is meant by "exempted or excused," we must look back to the earlier provisions of the law, as set forth in section 4, which also gives the machinery and the methods for hearing all exemptions or excuses, as well as the power to hear and determine all

questions as to excluding or discharging "persons or classes of persons from the selective draft under the provisions of this act, not included within the original jurisdiction of such local boards." In section 4, the "exemptions" provided for cover officers of the United States, duly ordained ministers, those in the military and naval service, etc. Those who may be "excused," in accordance with the rules and regulations promulgated by the President, are county and municipal officials, workers in armories, arsenals, and navy yards, those having dependents, those found to be physically or morally deficient, etc.

The words "exempted or excused," in section 5, however, evidently include also those called under the draft, who may be able to show that they are outside of the provisions of section 2, and therefore are not subject to military service, if they establish, in the way provided by the statute, that they are not male citizens, or male declarants, between the ages of 21 and 30. In other words, after a person has registered, he is expressly made subject to the military draft law, and must serve in the army until and unless he is exempted or excused by the machinery of the Draft Law itself. The only exception to this is that stated in the Angelus Case, where the local or district boards can be shown to have acted outside of the Draft Law and thus to have no jurisdiction as a basis for their determination.

Under these circumstances, as was held in the cases above cited, it is impossible to hold that a hearing would be unfair, or that a person drafted could avoid the consequences of such hearing by claiming thereafter that he should not have been required to present his claim for exemption or excuse—i. e., exclusion—in the way provided by the statute and by the regulations of the President. A determination by the court that such hearing was "unfair" would be equivalent to a finding that the provisions of Congress and the regulations promulgated by the President were unfair or outside of the law. Such a holding would be entirely different from those under the Immigration Law (Act Feb. 20, 1907, c. 1134, 34 Stat. 898), where executive officials have been held to have exerted power outside of that given them by the statute, as in U. S. v. Williams, 200 Fed. 541, 118 C. C. A. 632, Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114, and U. S. ex rel. Castro v. Williams (D. C.) 203 Fed. 155.

It is evident that, if a person has registered who was outside of the ages specified, or who failed to claim that he was exempt, or that he was not subject to draft, he would nevertheless, if drawn, be inducted into the army, and would be subject to the discipline thereof in all respects, even though thereafter he might change his mind and wish that he had claimed exemption, exclusion, or freedom from all liability to the exercise of jurisdiction under the law.

A determination by the local or district boards is final, if the question has been properly raised and decided against the individual; and the law evidently makes final a similar determination, where the question has not been properly raised by the individual himself. The reason for any such failure to present the question furnishes no basis for directing release of the individual, under a writ of habeas corpus or a writ of certiorari, if the hearing has been fair; that is, if it has been con-

ducted in accordance with the provisions of the statute and the regulations promulgated therefor. The present case furnishes no evidence of an unfair or extrajurisdictional determination of the question of liability to draft.

The writ will be dismissed, and the relator remanded.