## Briggs, Sr., et al. v. Commonwealth.

### Irvine, et al. v. Same.

(Decided June 20, 1919.)

### Appeals from Nelson Circuit Court.

1.   Bail—Breach of Condition of Bond—Forfeiture.—Where a person indicted for a felony has been inducted into the military service of the United States government, either voluntarily or by draft under the selective service act, when the defendant and his surety were instrumental in securing his induction, and at the time of trial is stationed at a camp within forty miles of the place of trial, a two hours' ride by rail, and upon application to the proper officer by the accused or his bail a pass or furlough would be granted to enable the accused to attend court, but such request is not made the bond for the appearance of the accused should be forfeited.

2.   Bail—U. S. Selective Service Regulations.—Under rule 13 of the selective service regulations any registrant at large on bail, under criminal process, having been classified as any other registrant, pending his discharge from confinement or the final disposition of his case, shall be treated as standing at the bottom of class IV.

3.   Bail—U. S. Selective Service Act.—Where accused were placed in class 1A under the selective service act, at their express solicitation, and by reason of said placement were inducted into the national army, whereas had rule 13 been followed, they would not have been called, effort on their part to be placed in class 1A was not indicative of any effort on their part to comply with the obligations of their bond.

4.   Bail—Release from Bail.—Causes which will entitle a bail to a release from the obligation of his bond are stated in the opinion.

5.   Bail—Soldier in U. S. Army.—Where accused had been offered a pass or furlough, which would have enabled him to attend trial, but declined to accept same, his non-appearance did not warrant or justify discharge.

6. Bail—Soldier in U. S. Army—Discharge of Bail.—If the principal on the day fixed for his appearance was a soldier in the United States' army and made application for a pass or furlough for the purpose of attending trial and he should be prevented from attending the trial solely because of the refusal to secure the pass or furlough his bail will be discharged.

7. Bail—Soldier in U. S. Army—Forfeiture of Bail.—The Soldiers' and Sailors' Civil Relief Act of 1918, has no application to a case involving the forfeiture of a bail bond where neither the accused nor their sureties made any effort to have the former attend trial, and where it is in evidence that a pass or furlough would have been granted had it been requested, and in fact a pass was offered to one of the accused for the purpose of attending trial.

8. Bail.—Forfeiture of Bail—Sureties.—The non-appearance of the accused due merely to the fact that he was in the military service of the United States government does not release the surety where it was within the power of the defendant and his sureties to have the accused present at the trial of the indictment and no attempt was made by either to do so.

9. Bail—Forfeiture of Bail—Selective Service Act.—The judgment, findings and determination of the several draft boards under the selective service act are final where the board has proceeded in due form and the parties involved have been given a fair opportunity to be heard and present their evidence; but where, after the classification and induction of the accused into the army, they are so situated as to be able to attend trial, forfeiture of the bond for their appearance does not bring in question any judgment, proceeding or determination of the draft board.

10. Bail—Waiver of Irregularity—Sureties.—Any irregularity in the filing in the circuit court of a bail bond taken by a police court is waived where the parties throughout the trial treat the bond as having been filed, admit the suretyship in the answer, in which no irregularity is pleaded, brief the case as if the bond had been put in evidence, and the bill of evidence shows it to have been filed.

11. Bail—Obligation of Bond—Forfeiture.—The obligations of a bail bond are that the accused shall be in court on the date fixed to answer the charge against him and shall at all times render himself amenable to the orders and process of the court; failing so to do the bond will be forfeited.

N. W. HALSTEAD and F. A. DAUGHERTY for appellants.

ERNEST N. FULTON, JOHN S. KELLY, JOHN A. FULTON, J. LEWIS WILLIAMS, Commonwealth's Attorney, and CHAS. H. MORRIS, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Lud Bodine and Andrew Briggs, Jr., were indicted by a grand jury of Nelson county, for the offense con-

demned by section 1155, Kentucky Statutes, and were released on bail furnished by appellants and another. Bodine's bail was fixed at $2,500.00, and that of Briggs at $2,000.00.

We shall designate the accused as defendants, the sureties as appellants.

After having been twice continued on defendants' motion the cases were called for trial June 5, 1918, when a similar motion by the defendants was overruled. Defendants failing to answer when called, the bonds were forfeited and summons issued against appellants, returnable the first day of the October term, 1918, to show cause, if any they could, why judgment should not be rendered against them on said forfeitures.

November 13, the court rendered separate judgments against the appellants for the respective amounts of the bonds, and to reverse said judgments these appeals have been prosecuted.

The proceedings in the two cases are identical. In the answer it is alleged: (1) That defendants registered on June 5, 1917, under the selective service act; they were duly classified and placed in Class 1A, and on May 25, 1918, they were called by the local board and inducted into the national army; (2) defendants and appellants alike were deprived by the regulations of the army from defending the indictments, and because of the detention of defendants in the army the court had no jurisdiction over the defendants or appellants; (3) under the act of Congress, known as "The Soldiers' and Sailors' Civil Relief Act," the court was without jurisdiction to proceed or to enter judgment on the obligations of appellants, and they asked that the order forfeiting the bonds be set aside and held for naught.

The allegations of the answers were controverted by a reply. On the motion to set aside the order forfeiting the bonds the appellants introduced no proof, but the testimony on behalf of appellee may be summed up as follows:

The defendants were eligible for service under the selective service act; they registered June 5, 1917; later their questionnaries were properly executed; they were classified and placed in Class 1A; it is provided in rule 13 of the selective service regulations that "Any registrant . . . at large on bail under criminal process shall

first be classified and recorded as any other registrant; but, pending his dicharge from confinement, or the final disposition of his case, he shall be treated as standing at the bottom of Class IV, and so recorded by entering in red ink next to and in the same column with his name on the classification list (Form 1000) the figure IV.''

The county attorney was insisting before the local board that this rule should be followed in the case of the two defendants, while counsel for the defendants was claiming they should be left in Class 1A, and taken in the order of their call. Being in doubt as to the proper procedure in the matter, members of the local board of Nelson county communicated with the chief of selective service for Kentucky, at Frankfort, informing him of the nature of the charge against defendants, and the board was advised to leave them out of the regular call. After these instructions were received by the local board, attorneys representing defendants went to Frankfort, and following said visit and within about two days after receiving orders to leave the defendants out of the call, the local board received instructions rescinding the former order and were told to take the defendants in the order of call in Class 1A. They were so placed and on May 25, 1918, were inducted into the military service of the United States government and stationed at Camp Zachary Taylor, Kentucky.

Before their induction, the local board received a request, by telephone, from a naval recruiting office in Louisville, to release the defendants from the order of their call, so that they could be enlisted in the navy, and after insistence upon the part of this recruiting office a consultation was held among the members of the local board and the recruiting office having been advised of the status of the defendants and of the charge against them, the request for their release was withdrawn.

About two weeks before June 5, 1918, the day of trial, appellants called upon the circuit judge at Munfordsville, in behalf of the defendants, and he referred them to the Commonwealth's attorney at Glasgow.

Appellants told the Commonwealth's attorney they wanted to get the defendants in the army and that they could get them in if he, the Commonwealth's attorney, would be willing to grant a continuance of their cases at the next term. They were advised this could not be

done and if the witnesses for the prosecution were present the Commonwealth would insist upon a trial. When the Commonwealth's attorney reached Bardstown to attend the June term of court, he was advised by the county attorney that the defendants had been inducted into the military service of the government. Thereupon he immediately communicated with the officer, at Camp Zachary Taylor, in charge of defendants, informing him of the trial and requested said officer to issue passes or grant furloughs to the defendants to enable them to attend the trial. This the officer promised to do. About 8 o'clock on the morning of the trial, the Commonwealth's attorney received a telephone message from one of the officers at the camp in charge of the defendants, that in compliance with his request he had tendered a pass to one of the defendants and he would not accept it and said he did not want to come to Bardstown to stand trial.

The captain commanding the company to which the defendants had been assigned, the adjutant of the battalion and the sergeant major, testify that a request was received from the Commonwealth's attorney for a leave of absence for the defendants, and that the officer having authority to issue passes immediately made a search for the defendants; he located the defendant Bodine, told him they wanted him to attend trial at Bardstown the next day and offered him a pass for himself and for the defendant Briggs; that Bodine declined to receive a pass; said he did not want it and that he could answer the same for Briggs. Under the regulations of the army passes can be granted by the company officers for any period under nine days, and at the expiration of this limit they have authority to extend the time not exceeding an additional nine days. A furlough, which is for a period of 10 days or over, can be granted only by higher authorities. It is also in evidence that the morning train leaving Louisville reaches Bardstown about 10:30, which would have been in time for the trial, and Bardstown is about forty miles from Camp Zachary Taylor.

Had defendants been placed at the bottom of Class IV, as provided in rule 13, they would never have been called into the service.

As to the release of bail. In this state where the principal is actually confined in an insane asylum, being thus in the custody of the state, and beyond the power of the

sureties to produce him, the latter is discharged. Wood v. Commonwealth, 17 Rep. 1076, 33 S. W. 729. Likewise where the principal has been adjudged to be of unsound mind. Commonwealth v. Fleming, 15 Rep. 491.

But where the principal, though insane, has not been so adjudged, the bail is liable if he permits the accused to escape beyond the jurisdiction and the court being in law the custodian of the principal, his surety must produce him, either for trial or for surrender as provided by statute. Commonwealth v. Allen, 57 Ky. 6.

The arrest and confinement of the principal for crime in another state does not relieve the bail. Withrow v. Commonwealth, 1 Bush 17; Yarbough, etc. v. Commonwealth, 89 Ky. 15; Hall v. Commonwealth, 20 Rep. 99.

Where the Commonwealth has taken the principal into its custody for another offense and thereby prevents his appearance and discharge of the recognizance it presents a good defense for the sureties when proceeded against for forfeiture. Alquire v. Commonwealth, 3 B. Mon. 340; Kirby v. Commonwealth, 1 Bush 113.

And, overruling Commonwealth v. House, 13 Bush 680, the court in Commonwealth v. Overby, 80 Ky. 208, held that where accused had been convicted by the federal court for the same offense charged against him in the state court, the effect was the same as if his non-presence was caused by the Commonwealth, for the authority of neither can be resisted by the bail or by the defendant, and in both cases the bail being deprived of the aid and protection of the Commonwealth, to which under the contract he is entitled, he was released.

Where the principal was arrested and removed from the county by order of an official of the United States government and the surety thereby deprived of the power to surrender him he cannot be made responsible on the bail bond for the failure of the principal to appear in answer to the charge. Commonwealth v. Webster, etc., 1 Bush 618.

And if the principal on the day fixed for his appearance was a soldier in the federal army, at a remote distance from the court, was refused a furlough, which he solicited, to enable him to attend in the discharge of his recognizance, this was held a good defense, it being alleged that he would have been in court had the furlough not been denied him, and his attendance was prevented

without fault on his part and against his will. Commonwealth v. Terry, 2 Duvall, 383.

That the cognizor was an infant under the control of his mother who removed him out of the state, and then prevented his surrender is insufficient to discharge the bail. Starr v. Commonwealth, 7 Dana, 243.

Death of the principal will relieve the bail. But in Bonner v. Commonwealth, 27 Rep. 652, where accused was confined in a hospital with a serious illness, physically incapacitating him from appearing on the day the indictment was returned the bail was not released. However, in Hargis, etc. v. Begley, etc., 129 Ky. 477, it is held that where defendants were prevented from appearing in answer to their recognizance not on account of any wrongful act or dereliction on their part, but on account of unavoidable accident or sickness, over which they had no control, they were entitled to a new trial under section 518 of the Civil Code.

In Commonwealth v. Rowland, 4 Met. 225, an allegation that at the time stipulated in the bond for the appearance of the accused he was held and retained by authority of the government of the United States as a prisoner, in another state, and therefore unable to appear and answer said charge in compliance with the term of his bond, was held insufficient.

The question for our decision might thus be stated:

Where a person indicted for a felony has been inducted into the military service of the U. S. government, either voluntarily or by draft under the Selective Service Act, when the defendant and his surety were instrumental in securing his induction, and at the time of trial is stationed at a camp within 40 miles of the place of trial, a two hours' ride by rail, and upon application to the proper officer, by the accused or his bail, a pass or furlough would be granted, to enable defendant to attend court, but such request is not made. should the bond for his appearance be forfeited?

We answer in the affirmative. There is not the least doubt that both defendants could have attended court June 5, 1918, had they so desired. The undertaking of the bond is, that accused shall be in court on the day fixed to answer the charge against him, and shall at all times render himself amenable to the orders and process of the court, failing so to do, the amount of the bond shall be paid to the Commonwealth. Criminal Code, sec. 82.

Not the slightest attempt was made to comply with this obligation, a hand was not turned, nor the scratch of a pen in an effort to have the defendants in court. Appellants had been warned that a continuance would not be granted, and had any portion of the diligence exercised in the endeavor to get defendants in the army, been directed toward the obtention of a brief leave of absence, the forfeiture could have been prevented.

Those who gave up their positions, left home and loved ones and entered the army or navy, and unselfishly offered their lives, if need be, to protect and defend those rights and privileges for which our forefathers fought, are deserving of our highest praise and commendation—real patriots these. But obedience being one of the chief characteristics of a true soldier it seems that a sense of honor and duty would have constrained defendants to have done everything in their power to have been on hand when their cases were called.

As to Bodine, he was offered a pass but declined it. Briggs' status is not far different; he could have secured the pass had be requested it; this he neglected to do.

A good statement of the law on the subject is found in Vincent v. Commonwealth, 1 Ky. Op. 452, wherein it is said:

"Construed fairly—the answer *prima facie* imparts that the principal in the recognizance was not delinquent at the term at which he was recognized to appear, but during that term was forced by military power *against his will* from Kentucky into the Confederate lines, and in like manner was prevented from appearing or being surrendered by the appellant as his bail before the adjudged forfeiture. And thus interpreted, the answer presents a good defense to *scire facias* and the circuit court erred in sustaining the demurrer and adjudging the penalty against the appellant."

Measured by this rule, and one that accords with the weight of authority, we do not think appellants have shown themselves entitled to the relief sought.

It is earnestly insisted the court erred in refusing to allow appellants the benefit of the federal statute known as the Soldiers' and Sailors' Civil Relief Act. (U. S. Comp. Stats. 1918, sec. 3078¼.) As stated in the act itself, it is intended as a protection for those in the military service of the United States in order to prevent

prejudice or inquiry to their civil rights. No civil rights of the defendants are involved here, but even so, Congress could hardly have intended to extend protection in a case presenting facts such as this, where the parties affected could have prevented the default had they made any effort so to do.

By section 3078¼ of said act, the entry or enforcement of any order, writ, judgment or decree or the stay, suspension or postponement of any suit or proceeding, may, in the discretion of the court, likewise be granted to sureties, grantors and endorsers. We do not think the lower court abused its discretion in refusing to stay the proceedings in the case at bar.

This concluson renders unnecessary a decision as to the liability of defendants to reimburse appellants for any sum the latter may be required to pay because of the non-appearance of accused. There is much conflict of authority as to the right of bail in criminal cases to recover reimbursement.

In 32 Cyc. 257, note 90, it is stated that the better opinion is against the right to recover.

We find countervailing opinions by United States Supreme Court, able dissenting opinions in many cases and the text writers are not in accord. See United States v. Ryder, 110 U. S. 729; Leary v. U. S., 224 U. S. 567; Ratcliffe v. Smith, 13 Bush 172; Ellis v. Norman, 19 Rep. 1798; Carr v. Davis, 64 W. Va. 522, 20 L. R. A. (N. S.) 58; Littleton v. State, 46 Ark. 413; Jackson v. Davis, 4 Mackey (D. C.) 202; Beland v. Guy, 20 Wash. 161, 54 Pac. 995; 3 R. C. L. p. 60, sec. 73; United States v. Summers, 47 Fed. 575, 14 L. R. A. 78; Highmore on Bail, 204.

We find no case holding that the non-appearance of the accused, due merely to the fact that he was in the military service, releases the surety, where it was within the power of the defendant and his sureties to have the former present at the trial of the indictment; but no attempt was made by either to have the accused on hand.

A splendid statement of the rule governing the case at bar is found in 3 R. C. L. sec. 65, under the head of bail, which is as follows:

"The imprisonment of a citizen by legitimate orders of a military commander has the same force and effect as if he were confined upon a proper warrant from a civil tribunal. And therefore if the principal in a bail bond is

arrested and imprisoned by military or naval authorities, and the sureties are prevented thereby from procuring his appearance at the trial, they will be excused from complying with the conditions of the bond; and the enforced military or naval service of the principal will be a sufficient excuse for his non-appearance in accordance with his recognizance. Where the principal is at the time of the execution of his bail enlisted in the federal army and is refused a furlough which he asks for in order to be present at his trial, the bail are exonerated. There is some difference of opinion as to whether the voluntary enlistment of a principal in the army or navy after the entry of bail, whereby it is made impossible for him to appear in accordance with the condition of the recognizance, will relieve the sureties from their obligation. It is held in some of the cases that where the principal enlists without the knowledge or consent of his sureties, their consequent inability to retake him into custody is ground either for their release or at least for a continuance where it is shown that they were reasonably diligent in their endeavor to secure the appearance of the principal. The better authorities hold, however, that voluntary enlistment, being the act of the obligor, cannot release either him or his sureties from his obligations. The reason for not exonerating the bail will be still stronger if the enlistment was with the advice and consent of the surety, and where this is the case it seems that the detention of the principal is not a good defense even in those jurisdictions where the decisions have treated the suretes most leniently. In every case where such a defense is advanced it should be shown that proper effort has been made to secure the person of the principal from the military authorities. The fact that the principal has been captured by foreign soldiers and detained in another country may be advanced as a defense by his sureties, and, if the taking is not connived at by the principal, will relieve against a forfeiture for his failure to appear at the time specified.'' To the same effect is 6 C. J. p. 1028; 6 Amer. & Eng. Anno. Cases 616. The text found in these books finds support in the following cases:

People v. Cushney, 44 Barb. (N. Y.) 118; Belding v. State, 25 Ark. 315; Lamphire, et al. v. State, 73 N. H. 463; Winninger v. State, 23 Ind. 228; People v. Cook, etc., 30 How. Pr. 110; State of Iowa v. Scott, 20 Iowa 63; Way v.

Wright, etc., 5 Metc. (Mass.) 380; Gingrich, et al. v. People, 34 Ills. 448.

It is further urged by counsel for appellants that the judgment, findings, and determination of the local board under the selective service act in placing defendants in Class 1A are conclusive, and a number of federal cases are cited in support of this proposition. We have examined all these cases, and others, and find that in almost every one of them the real question involved was whether the selective draft act applied to the person involved, most of them growing out of petitions for writs of *habeas corpus*. The courts held that the decisions of the draft boards are final where the board has proceeded in due form and the party involved was given a fair opportunity to be heard and present his evidence. See Angelus v. Sullivan, 246 Fed. 54; Bartalini v. Mitchell, 248 Fed. 997; United States, Ex Rel Brown v. Commanding Officer, etc., 248 Fed. 1005; Ex Parte Platt, 255 Fed 413; Brown v. Spellman, etc., 254 Fed. 215; Ex Parte Tinkoff, 254 Fed. 222.

Ex Parte King, 246 Fed. 868, relied upon by appellant, was a case of a soldier who after the declaration of war, killed a policeman in Newport, Ky., while in the performance of his duty as a soldier, and the court held that the military authorities had superior jurisdiction of the offense and the jailer was directed to deliver the prisoner to the military authorities

There is nothing in the present suit that brings in question any judgment, proceedings or determination of the local or district draft board. Whether the board should have followed rule 13 of the selective service regulations in the placement of the defendants is not involved here.

In the Bodine case the bond was executed before the police court of Bardstown, and it is pointed out by counsel that the bond was never certified to the circuit court or filed in the case. It is apparent however the parties throughout the trial of the cases treated the bond as having been properly filed; indeed, the suretyship of appellants is admitted in the answer in which no irregularity as to the filing is pleaded. In appellants' brief we find reference to the fact that the bond was put in evidence; the bill of exceptions shows it was filed in the

circuit court, though appellants objected to incorporating the same therein.

There is a discrepancy in the amount of the bond, as stated in the summons, but this is not material and appellants were in no wise prejudiced thereby. Appellants are not entitled to a reversal on this ground.

The uncontradicted evidence shows that after the induction of the defendants into the military service they were so situated, both as to time and distance, that they could have been present at the calling of the indictment against them on June 5, 1918. Passes or furloughs would have been given upon request of either of accused or sureties. As to one of the accused a pass was actually offered, and when the defendant and the appellants failed and neglected to comply with the obligations of the bond it was proper for the lower court to order a forfeiture thereof.

Finding no error in the judgment appealed from, same is accordingly affirmed.