RENDERED: APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0171-MR

MARCIE LYNN TROUTT AS
ADMINISTRATRIX OF THE ESTATE
OF MADELYNN NOEL TROUTT
AND INDIVIDUALLY AND JEREMY
TROUTT                                                                          APPELLANTS


|               | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---------------|-------------------------------------|
| v.            | HONORABLE ANN BAILEY SMITH, JUDGE   |
|               | ACTION NO. 22-CI-000909             |


THE BAIL PROJECT, INC.; CARRIE
COLE; HOLLY ZOLLER; AND
SHAMEKA PARRISH-WRIGHT                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, KAREM, AND McNEILL, JUDGES.

GOODWINE, JUDGE: Marcie Lynn Troutt as Administratrix of the Estate of

Madelynn Noel Troutt and Individually and Jeremy Troutt (collectively the

"Troutts") appeal from an order of the Jefferson Circuit Court granting judgment in

favor of The Bail Project, Inc., and its employees:  Carrie Cole; Holly Zoller; and Shameka Parrish-Wright (collectively "TBP").  TBP moved to dismiss, and the circuit court converted the motion to one for summary judgment because TBP relied on matters outside the pleadings.  The circuit court found there was no genuine issue of material fact regarding whether TBP owed the Troutts a duty of care.  Based on our review, finding no error, we affirm.

On February 24, 2022, the Troutts filed a complaint against TBP alleging TBP was negligent in posting a bail bond for Michael DeWitt ("DeWitt"), loss of consortium of their daughter, and punitive damages.  The suit arose out of a fatal accident between DeWitt and the Troutts' daughter Madelynn.  According to the complaint, DeWitt has a criminal history dating back to 2012.  Relevant to this appeal, on February 16, 2021, DeWitt was arrested in Louisville and charged with receiving stolen property (motor vehicle), public intoxication (controlled substance), criminal trespass, disorderly conduct, resisting arrest, and assault on a police officer resulting in physical injury.

On February 24, 2021, TBP posted a bond for DeWitt, and he was released from custody.  Five days later, on March 1, 2021, DeWitt, while under the influence of amphetamines and benzodiazepines, drove a stolen vehicle and crossed the centerline of Dixie Highway in Jefferson County, causing a head-on collision with a vehicle driven by Madelynn, a 17-year-old.  DeWitt was allegedly

-2-

traveling 58 miles per hour one second before the impact, which occurred in a 45-mile-per-hour zone. Additionally, the Troutts alleged DeWitt was driving a stolen car containing six stolen guns. Tragically, Madelynn died at the hospital about forty-five minutes after the accident.

The Troutts claimed TBP was negligent in failing "to reasonably investigate DeWitt's criminal history and propensity to re-offend before posting his bail bond thereby permitting him to be released from jail." Record ("R.") at 5. They also alleged TBP failed to comply with duties it undertook "to ensure DeWitt attended the drug rehabilitation program and other terms and conditions of bond," and "breached other duties of care not yet known" to the Troutts and other duties that "were the proximate cause" of the accident that resulted in Madelynn's death. *Id.*

TBP filed a CR[1] 12.02(f) motion to dismiss. TBP argued Kentucky does not recognize a legal duty of a third-party bail surety to control the post-release actions of a criminal defendant. Even if TBP had a duty regarding DeWitt's release, DeWitt's actions were an intervening superseding cause. Additionally, TBP argued its free bail assistance for indigent pretrial detainees was political speech protected by the First Amendment. In support of its motion, TBP attached DeWitt's form AOC-365.1 which stated his bail conditions and that TBP

---

[1] Kentucky Rules of Civil Procedure.

was the surety.  TBP also attached an amended order from the Supreme Court of Kentucky titled, "In Re:  Authorization for the Non-Financial Uniform Schedule of Bail Administrative Release Program."  R. at 67.  Both documents are public records.

The Troutts opposed the motion to dismiss arguing Kentucky recognizes the undertaker's duty, and duty depends on the facts, which requires discovery.  Additionally, they argued the First Amendment is an affirmative defense, which cannot be properly decided on a motion to dismiss.  The Troutts did not mention either document in its response to the motion.

The circuit court entered an order converting TBP's motion to dismiss to a motion for summary judgment and granting judgment in favor of TBP.  The circuit court found TBP did not have a special relationship with DeWitt and did not undertake a duty to control DeWitt's actions upon his release from jail.  Thus, TBP owed Madelynn no duty of care.

The Troutts then filed a motion to vacate the circuit court's order converting TBP's motion to one for summary judgment and granting judgment in TBP's favor.  The Troutts argued they were entitled to discovery before the circuit court could grant summary judgment.  TBP responded opposing the motion.  TBP argued the civil rules require circuit courts to convert a motion to dismiss to one for summary judgment when it relies on matters outside the pleadings, and there

are no additional facts that would change the outcome of the case. The circuit court heard arguments from both parties and denied the Troutts' motion. This appeal followed.

On appeal, the Troutts argue the circuit court erred in: (1) *sua sponte* converting TBP's motion to dismiss to a motion for summary judgment without prior notice; (2) granting summary judgment; and (3) granting judgment when the First Amendment was pled as an affirmative defense.

First, the Troutts argue the circuit court erred in *sua sponte* converting TBP's motion to dismiss to a motion for summary judgment without prior notice. The Troutts' argument ignores well-established Kentucky statutory and case law. "Kentucky Rule of Civil Procedure (CR) 12.02 mandates that a motion to dismiss is converted to a motion for summary judgment if matters outside the pleadings are presented to, and not excluded by, the circuit court." *Schell v. Young*, 640 S.W.3d 24, 33 (Ky. App. 2021). "A trial court is free to consider matters outside the pleadings; however, doing so converts the request for dismissal into a motion for summary judgment." *Middleton v. Sampey*, 522 S.W.3d 875, 878 (Ky. App. 2017) (citing CR 12.02; *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 840 (Ky. 1960)). The circuit court correctly converted TBP's motion to one for summary judgment as required by the civil rules. Thus, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no

genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Sampey*, 522 S.W.3d at 878 (quoting *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996)).

Second, the Troutts argue the circuit court erred in granting summary judgment in favor of TBP. Under this argument, the Troutts argue: (1) TBP owed a duty like any other business; (2) duty depends on the facts, which requires discovery; and (3) causation is a jury issue.

In their complaint, the Troutts allege that TBP "failed to reasonably investigate DeWitt's criminal history and propensity to re-offend before posting his bail bond," and by paying DeWitt's bail, TBP "failed to comply with various duties they had undertaken to ensure DeWitt attended the drug rehabilitation program and other terms and conditions of bond." R. at 5.

However, DeWitt's bail determination on form AOC-365.1 did not require DeWitt to attend a drug rehabilitation program. The only conditions on DeWitt's bail determination form were "no further violations of the law," "no illegal use/possession of firearms or other deadly weapons," and "make all court dates." R. at 66. This document was attached to TBP's motion to dismiss and was properly considered by the circuit court.

Kentucky courts have never recognized a special relationship between a criminal defendant and a bail surety in a civil action. Instead, the bail surety's

sole duty is to the court in the criminal action against the defendant. RCr[2] 4.00(g) defines "Surety" as "a person other than the defendant who executes a bail bond and assumes the obligations therein." Kentucky courts have long held that when a criminal defendant "neglect[s] to comply with the obligations of the bond, it [is] proper for the lower court to order a forfeiture thereof." *Briggs v. Commonwealth*, 185 Ky. 340, 214 S.W. 975, 979 (1919). Thus, TBP's sole liability for DeWitt's failure to comply with the terms and conditions of his release is forfeiture of the bond paid on his behalf. Neither the Supreme Court of Kentucky nor the Kentucky General Assembly have extended this duty to civil liability for failure to control a criminal defendant's actions on pretrial release.

Even if we ignore the fact that Kentucky does not recognize a duty for a bail surety to control a criminal defendant's actions upon pretrial release, the facts do not support imposing a duty on TBP. The Troutts argue TBP voluntarily undertook a duty to control DeWitt's actions upon release. DeWitt's bail determination does not state that DeWitt was to be supervised by TBP upon release. Merely posting bail for a criminal defendant does not impose a voluntary duty of care upon a surety.

Though TBP "did not voluntarily assume the duty to supervise" DeWitt, our analysis turns to whether TBP had an affirmative duty to control

---

[2] Kentucky Rules of Criminal Procedure.

-7-

DeWitt's actions upon release. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 848 (Ky. 2005). "As a general rule, an actor whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another." *Id.* at 849. However, there are two exceptions to this rule:

> A duty can, however, arise to exercise reasonable care to prevent harm by controlling a third person's conduct where: "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315 (1965). *See also James v. Wilson*, 95 S.W.3d 875, 890 (Ky. App. 2002); *Evans v. Morehead Clinic*, 749 S.W.2d 696, 698 (Ky. App. 1988); Restatement (Third) of Torts: Liability for Physical Harm § 40, 41 (Proposed Final Draft No. 1, 2005).

*Id.* (footnote omitted).

> For an exception to apply, a high level of control is required:
>
> [T]he defendant's ability to control the person who caused the harm must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred. Special relationships involving entities in charge of a person with dangerous propensities are illustrative of what is necessary for a special relationship: courts of other jurisdictions have required a substantial degree of control.

*Id.* at 851.

There are no facts under which TBP could have owed a duty to the Troutts. The mere act of paying bail for a criminal defendant does not require a surety to control the criminal defendant while out of custody on bond. It would be unsound public policy to require a bail surety to assume an affirmative duty to supervise a criminal defendant's actions. If we accepted the Troutts' argument, then any individual, often a family member, who paid bail on behalf of a criminal defendant would be civilly liable to victims of crimes committed while the defendant was out of custody on bond. This is undoubtedly why the Supreme Court of Kentucky and the Kentucky General Assembly have never created a civil cause of action to hold a bail surety liable for a criminal defendant's actions. To do so would needlessly open the floodgates and overburden our courts' civil dockets. Instead, our courts hold criminal defendants accountable for their actions under their criminal indictment by forfeiture. Thus, the circuit court correctly found that TBP had no control over DeWitt, did not have a special relationship, and, therefore, had no affirmative duty to control his conduct. As TBP owed no duty of care, we do not reach the Troutts' causation argument.

Finally, the Troutts argue TBP's First Amendment defense should not have been decided on a motion to dismiss because it requires a fact-specific inquiry. In its judgment, the circuit court acknowledged TBP's First Amendment argument but did not fully address it because the court's finding that TBP did not

owe Madelynn a duty of care was determinative of the Troutts' claims. Because

we have affirmed the circuit court's judgment on the same grounds, the Troutts'

First Amendment argument is moot.

Additionally, we note that the Seventh Circuit rejected TBP's First

Amendment argument in an unrelated case:

> The First Amendment's Free Speech Clause, applicable to the states through the Fourteenth Amendment, extends to both "symbolic or expressive conduct as well as to actual speech." *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); see also *Stromberg v. California*, 283 U.S. 359, 51 S. Ct. 532, 75 L. Ed. 1117 (1931); *Gitlow v. New York*, 268 U.S. 652, 45 S. Ct. 625, 69 L. Ed. 1138 (1925) (incorporating the First Amendment right to free speech against the states). But the First Amendment protects conduct only when it is "inherently expressive." *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). To be inherently expressive, "the conduct in question must comprehensively communicate its own message without additional speech." *Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017). That is, "the conduct *itself* must convey a message that can be readily 'understood by those who view[ ] it.'" *Id.* at 378 (alteration in original) (quoting *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989)). Otherwise, "an apparently limitless variety of conduct [could] be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). . . .
>
> Conduct that does not convey a message without the aid of additional speech, however, receives no First

Amendment protection.

*The Bail Project, Inc. v. Commissioner, Indiana Department of Insurance*, 76 F.4th 569, 575 (7th Cir. 2023).

> The Seventh Circuit held:
>
> The Bail Project's act of paying cash bail does not inherently express any message. On its own, paying bail for a pretrial defendant does not communicate even the most general version of The Bail Project's message – its opposition to cash bail. Without knowledge of The Bail Project's mission and repeat-player status, a reasonable observer would not understand its payment of cash bail at the clerk's office as an expression of any message about the bail system. A person could be paying bail to secure a loved one's freedom pending trial, or they could be performing a purely charitable act to help an indigent defendant. But whatever their motivation for doing so, the point is that nothing about the act itself inherently expresses any view on the merits of the bail system. Because the conduct itself does not convey a message that "can be readily 'understood by those who view[ ] it,'" the First Amendment does not protect the conduct HEA 1300 regulates. *Tagami*, 875 F.3d at 378 (alteration in original) (quoting *Johnson*, 491 U.S. at 404, 109 S. Ct. 2533).

*Id.* at 577.

Thus, even if this issue was not moot, we would be inclined to agree with the Seventh Circuit that TBP's act of paying cash bail is not protected by the First Amendment.

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

-11-

McNEILL, JUDGE, CONCURS.

KAREM, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

KAREM, JUDGE, DISSENTING:  Respectfully, I dissent.  While agreeing with the majority in their analysis and conclusions regarding the Appellees' First Amendment argument, I diverge from the Opinion where it relates to TBP's duty.

The Rules of Criminal Procedure govern how criminal prosecutions are conducted.  Rule of Criminal Procedure 4 dictates the function and use of bail in Kentucky.  If a judge decides a bail amount should be set for a defendant, the judge follows RCr 4.16 governing the amount of bail:

> (1) The amount of bail shall be sufficient to insure compliance with the conditions of release set by the court.  It shall not be oppressive and shall be commensurate with the gravity of the offense charged.  In determining such amount the court shall consider the defendant's past criminal acts, if any, the defendant's reasonably anticipated conduct if released and the defendant's financial ability to give bail.

A defendant may post his own bail but it is not uncommon for someone else to provide the bail (*i.e.*, an employer, friend or relative).  A person, or as in the case *sub judice*, an entity, who posts bail for a defendant assumes the moniker of surety.  "'Surety' means a person other than the defendant who executes a bail bond and ***assumes the obligations therein***."  RCr 4.00(g) (emphasis added).  In fact, TBP affirmatively assumed that obligation as evidenced by its

-12-

signature on AOC Form 365.1[3] which they attached to the motion to dismiss as evidence. "I undertake that [DeWitt] will appear and be amenable to the orders and process of this and any other court in which this proceeding may be pending for any and all purposes and at all stages."

One of the most well-litigated functions of a surety is the responsibility to guarantee the defendant's appearance in court. Dating back to the 1800's and continuing to the present day, Kentucky courts have enforced this responsibility by ordering the posted bail be forfeited to the court when a defendant, out on bail, fails to return to court. *Briggs v. Commonwealth*, 185 Ky. 340, 214 S.W. 975 (1919) (bail is liable where surety has allowed the defendant to escape beyond the jurisdiction of the court); *Vaughn v. Commonwealth*, 395 S.W.2d 763 (Ky. 1965) (bail forfeited upon surety's failure to produce defendant after his release from custody in Tennessee).

In addition, the court may order forfeiture when a defendant violates *any* condition of release.

> The purpose of posting bonds "is to secure the defendant's [sic] being arrested and brought to justice." [*Abrams v. Commonwealth*, 254 Ky. 68, 70 S.W.2d 983, 984 (1934); *see also*, *Johnson Bonding Company, Inc. v. Commonwealth*, Ky., 487 S.W.2d 911, 913 (1972).] Bonds are permitted by the court "for the convenience of a person not yet proved to be guilty, and to protect the state against the expense of keeping such persons in jail."

---

[3] Administrative Office of the Courts.

[*Abrams*, *supra*.] Bonds are discretionary, and the decision to impose, forfeit, or remit bonds lies solely with the trial court.

But bonds are also used to impose certain non-financial conditions to control the defendant's behavior while on pretrial release. The majority of jurisdictions allow courts to forfeit a defendant's bond if one of these conditions is breached. Kentucky case law has yet to broach the subject of whether bond forfeiture is appropriate for violation of non-financial conditions. However, the language of the applicable statute and procedural rule clearly indicates the General Assembly's intent that courts have the option to forfeit for such violations. KRS[4] 431.545 plainly states that bond forfeiture is appropriate if a defendant "shall willfully fail to appear **or shall willfully fail to comply with the conditions of his release** . . . ." KRS 432.545 (emphasis added). Likewise, RCr 4.42 states:

> (1) If at any time following the release of the defendant and before the defendant is required to appear for trial the court is advised of a material change in the defendant's circumstances **or that the defendant has not complied with all conditions imposed upon his or her release**, the court having jurisdiction may order the defendant's arrest and require the defendant or the defendant's surety or sureties to appear and show cause why the bail bond should not be forfeited or the conditions of release be changed, or both.
>
> . . . .
>
> (3) Where the court is acting on advice that the defendant has not complied with all conditions imposed upon his or her release, the court shall not change the conditions of release or order forfeiture

---

[4] Kentucky Revised Statutes.

-14-

of the bail bond unless it finds by clear and convincing evidence that the defendant has wilfully [sic] violated one of the conditions of his or her release or that there is a substantial risk of nonappearance.

Based on these rules, we believe the trial court was acting within its authority when it forfeited $5,000 of the $20,000 property bond posted for Clemons's release. There was clear and convincing evidence at the forfeiture hearing that Clemons had, in fact, violated his release conditions. Not only did the trooper testify that Clemons's blood alcohol level was .0516, but Clemons himself testified he had been drinking wine. Since his bond conditions affirmatively stated Clemons was prohibited from drinking, consuming, or possessing alcoholic beverages, his actions were clearly in violation.

*Clemons v. Commonwealth*, 152 S.W.3d 256, 258-60 (Ky. App. 2004) (some footnotes omitted). Clearly, the courts take seriously the obligations assumed by the surety and, moreover, have the authority to inflict sanctions by means of bond forfeiture when these obligations are not met.

In this particular case, the arraigning judge set a $5000 bond on DeWitt and added non-financial conditions which included no further violations of the law, no illegal use/possession of firearms or other deadly weapons, and to make all court dates. Following arraignment TBP, a charitable organization, stepped in and posted bond assuming an obligation to the court for DeWitt to return to court and follow court orders. Contrary to the finding of the trial court, it is clear TBP voluntarily entered into a special relationship with the defendant. The question

-15-

then becomes to whom do they owe a duty? Clearly, they owe a duty to the court; but does that duty extend beyond the court?

TBP cites *Fryman v Harrison*, 896 S.W. 2d 908 (Ky 1995), for the proposition that they can not be held liable for a defendant's actions once released on bond. However, *Fryman* is easily distinguishable in that it involves government officials, not the surety who has voluntarily assumed a duty as outlined in RCr 4.00(g).

At this juncture it is important to understand who may fulfill the responsibility of surety. RCr 4.30 sets out the qualifications to become a surety and even disallows people in certain occupations from taking up the role. "No attorney at law, sheriff, deputy sheriff, judge, clerk, deputy clerk, trial commissioner, master commissioner or pretrial release officer shall be taken as surety on any bail bond, including bail on appeal under Rule 12.78." RCr 4.30(2). And in 1976, Kentucky was the first state to make it illegal for bail bondsmen to function within its boundaries. Instead, the Administrative Office of the Courts Pre-Trial Services was established in Kentucky to ensure a fairly set bail. Pre-Trial Service Officers interview defendants within 24 hours of arrest and present gathered information to a judge who can then make an informed decision regarding bail for each defendant including any non-financial conditions of release.[5] The

---

[5] Pretrial Services – Kentucky Court of Justice (kycourts.gov).

question of whether a surety owes a civil duty for the act of posting bond for a criminal defendant is a case of first impression in Kentucky.

As pointed out by the majority, in *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005) the Supreme Court held that there is a difference between misfeasance and nonfeasance, and it expounded that common law is hesitant to confer a duty upon a third-party actor. *Id.* at 849. However, the Court went on to explain when a duty would be imposed upon a third-party actor.

> A duty can, however, arise to exercise reasonable care to prevent harm by controlling a third person's conduct where: "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315 (1965). *See also James v. Wilson*, 95 S.W.3d 875, 890 (Ky. App. 2002); *Evans v. Morehead Clinic*, 749 S.W.2d 696, 698 (Ky. App. 1988); Restatement (Third) of Torts: Liability for Physical Harm § 40, 41 (Proposed Final Draft No. 1, 2005).

*Id.* (footnote omitted). Clearly, a surety who posts bond for a defendant and is liable to the court for the defendant's actions (violating conditions of release) or inactions (not returning to court), has a special relationship with the defendant. The next prong of the analysis is to decide what standard of care TBP owed Madelynn Troutt.

*Kendall v. Godbey*, 537 S.W. 3d 326 (Ky. App. 2017), is a negligent

hiring case wherein a taxicab company was sued following the rape of one of its

clients by its driver. In *Kendall*, the taxicab company argued that the rape of a

passenger by one of its drivers was not foreseeable, and thus no duty existed.

However, this Court disagreed.

> In negligent hiring/retention claims the law imposes a duty upon the employer to use reasonable care in the selection or retention of its employees. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705 (Ky. 2009). Under the theory of negligent hiring/retention, the employer's liability may only be predicated upon its own negligence in failing to exercise reasonable care in the selection or retention of its employees. *Id.* at 732. Thus, the focus is on the employer's conduct and requires that the traditional negligence elements of a negligence claim be established – duty, breach, and consequent injury. *Grubbs ex rel. Grubbs v. Barbourville Family Health Center, P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003).

> We disagree with both the trial court and Godbey that Community Cab had no duty to Kendall. They contend that there was no foreseeability that Abukar would assault Kendall because he had a clean criminal record, and therefore, Community Cab had no foreseeability of the assault. No foreseeability equals no duty to Kendall, a passenger.

> Nevertheless, in *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901 (Ky. 2013), the Kentucky Supreme Court restructured the issue of foreseeability in relation to duty. The Court in *Shelton* embraced the universal duty of care concept rather than the foreseeability analysis. By removing foreseeability as a part of the duty analysis, duty effectively becomes a given element in negligence actions. Hence, we believe

-18-

that Community Cab had a duty to its passengers to use reasonable care in the selection of its employees.

*Kendall*, 537 S.W.3d at 331-32. Using this analysis, TBP owed a universal duty of care to Madelyn Troutt and a finding of summary judgment for TBP by the trial court was premature.

Typically, duty is a question of law, while breach and injury are questions of fact for the jury to decide. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). Having found that TBP had a special relationship with DeWitt and that TBP owed a universal duty of care to Madelyn Troutt, I would reverse the trial court to proceed with litigation to further determine breach, causation, and damages, if any.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANTS:

Vincent E. Johnson
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES:

Nathan A. Lennon
Ft. Mitchell, Kentucky

Robert A. Ott
Louisville, Kentucky