STATE OF IOWA, Appellee, v. FENTON BENEDICT et al., Appellants.

No. 46499.

JULY 28, 1944.

Peter W. Janss and Ted Sloane, both of Des Moines, for appellant.

John M. Rankin, Attorney General, Wm. F. McFarlin, Assistant Attorney General, and Dale Ewalt, County Attorney, for appellee.

GARFIELD, J.—On March 19, 1942, defendant Benedict was indicted for child desertion, the court ordered a bench warrant issued for his arrest, and fixed his bail at $1,000. On November 9, 1942, the sheriff arrested defendant, he appeared with his attorney, waived arraignment, pleaded guilty, and asked for immediate sentence. On the same day he changed his plea of guilty to not guilty. On the next day a bail bond was filed, signed by Benedict and appellant Daisy E. Johnson as surety.

On November 18, 1942, the case was reached for trial; a jury was present and ready to hear it. Benedict's attorney was present and stated he was unable to locate his client. "I don't feel that he has informed me properly of his whereabouts." The attorney asked leave to withdraw his appearance but the court denied such leave. Defendant was duly called in open court but failed to appear. His failure to appear was entered of record, his bail was ordered forfeited, and the sheriff was directed to give notice to Benedict and appellant to appear and show cause why judgment should not be entered for the amount of the bail.

As originally announced by the court in the presence of Benedict's attorney, the show-cause hearing was set for December 4, 1942. Apparently, however, the required notices were not given in time for that date and on March 17, 1943, a new order was made for notice to defendant and appellant of a hearing to be had on April 12, 1943, to show cause why judgment should not be entered for the amount of the bail. This notice was given but neither defendant nor appellant appeared and judgment was entered against them for the $1,000.

On June 11, 1943, the sixtieth day after the entry of judgment, appellant filed her motion to set aside the judgment on

the ground that Benedict had been in the armed forces of the United States since May 11, 1943. The motion quotes section 103(3), United States Soldiers' and Sailors' Civil Relief Act of 1940, as amended October 6, 1942 [56 Stat. at L., chapter 581] (section 513(3), 50 U. S.. C., Appendix). This motion was amended on September 8, 1943, to state that appellant made diligent search for Benedict immediately after the trial was set in November 1942, but did not succeed in locating him till May 17, 1943; thereafter appellant caused Benedict to allocate some of his pay to the support of the children for whose desertion he was indicted; appellant offers to produce defendant upon his discharge from the Army or on leave, to stand trial, within a reasonable time; appellant has paid the costs incurred since defendant's release on bond.

On October 20, 1943, hearing was had on appellant's motion to set aside the judgment. Benedict was not present. Appellant's husband, the only witness, testified that he first knew in November 1942 that defendant had not appeared for trial; defendant worked with a construction crew; numerous efforts to locate him proved unavailing until after he had been inducted into the Army on May 11, 1943. Appellant's motion to set aside the judgment was overruled. The lower court found there was no adequate explanation for defendant's failure to appear for trial and for the lack of knowledge of his whereabouts from November 1942 until May 1943. The court concluded that section 103(3) of the Soldiers' and Sailors' Relief Act did not entitle appellant to relief because defendant was not inducted into the service until nearly six months after the forfeiture of the bond and one month after the entry of judgment. The appeal is from this ruling.

The Iowa statutes here involved are sections 13631 to 13636, chapter 631, Code, 1939. Insofar as applicable, they provide:

"13631 Entry. If the defendant fails to appear for arraignment, trial, or judgment, or at any other time when his personal appearance in court is lawfully required * * * the court must at once direct an entry of such failure to be made of record, and the undertaking of his bail * * * is thereupon forfeited.

"13632 Notice to show cause. As a part of the entry of forfeiture * * * the court shall direct the sheriff of the county to give ten days notice in writing, or otherwise * * * to the defendant and his sureties to appear and show cause, if any, why judgment should not be entered for the amount of such bail * * *.

"13633 Judgment. If the defendant and his sureties fail to appear, judgment shall be entered by the court. * * * The judgment * * * shall have the same force and effect as any other judgment of such court. * * *

"13636 Judgment set aside. Such judgment shall never be set aside unless, within sixty days from the date thereof, the defendant shall voluntarily surrender himself to the sheriff of the county, or his bondsmen shall, at their own expense, deliver him to the custody of the sheriff within said time, whereupon the court may, upon application, set aside the judgment * * *."

Appellant seeks to have the judgment set aside under the terms of section 13636. She contends here that she is entitled to a reversal because of section 103(3) of the Soldiers' and Sailors' Civil Relief Act, which provides:

"Whenever, by reason of the military service of a principal upon a criminal bail bond the sureties upon such bond are prevented from enforcing the attendance of their principal and performing their obligation the court shall not enforce the provisions of such bond during the military service of the principal thereon and may in accordance with principles of equity and justice either during or after such service discharge such sureties and exonerate the bail."

Appellant places no reliance upon any other provision of the Relief Act.

The question presented is whether by reason of Benedict's military service appellant was prevented from enforcing his attendance *and performing her obligation.* The "obligation" to which the Relief Act refers seems plainly to be the sureties' obligation under the bond. No other meaning of this term is suggested.

The bond signed by appellant is in substantially the form set out in section 13616, Code, 1939. In the bond the obligors

1182

"hereby undertake that the said defendant shall appear in said Court and answer said indictment, and abide the orders and judgments of said Court, and not depart without leave of same; or if said defendant fail to perform either of these conditions we will pay to the State of Iowa the sum of $1,000.00."

Appellant's obligation under this bond was that defendant should appear in court and answer the indictment, abide the orders and judgments of the court, and not depart without its leave. "* * * the purpose of a bail bond is to secure the presence of the one charged in court, when his presence is required, in order to answer to the charge for which the bond is given." State v. Clark, 234 Iowa 338, 341, 11 N. W. 2d 722, 724.

"The very essence of the obligation assumed by the sureties upon a bail bond is that they will produce the accused in open court, in accordance with the terms of the bond * * *." State v. Hamilton, 196 Iowa 998, 1002, 192 N. W. 838, 839.

See, also, State v. Arioso, 207 Iowa 1109, 1113, 224 N. W. 56; State v. Clark, supra.

Benedict was not inducted into the military service until almost six months after he was required by his bond to appear for trial. When he failed to appear for trial there was a breach of his bond, it was forfeited, and appellant's liability was then fixed. State v. Kraner, 50 Iowa 575, 577; State v. Scott, 20 Iowa 63, 66; 6 Am. Jur. 116, section 175; 8 C. J. S. 169, section 85. Benedict's subsequent military service in no way prevented appellant from performing the obligation under her bond to have defendant in court at the time of trial. That service did not commence till after a judgment was entered which had "the same force and effect as any other judgment of such court." Code section 13633. See, also, State v. Baldwin, 78 Iowa 737, 36 N. W. 908; State v. Bryant, 55 Iowa 451, 8 N. W. 303. The conclusion is thus unavoidable that section 103(3) of the Relief Act does not entitle appellant to a reversal.

The most that can be claimed is that defendant's military service prevented appellant from delivering him to the custody of the sheriff as a condition to relief which might be granted in the discretion of the court, under section 13636. The showing that appellant was prevented even from so doing is far from satisfactory. The only evidence on the question is that a few

days after defendant was inducted on May 11, 1943, appellant's husband had this telephone conversation with one in charge of a hospital, presumably an Army hospital, in Colorado: "He told me that the defendant was a patient at the Hospital there. I asked him whether or not I could obtain his release, and he said 'No, not as long as he was a patient there.'" It is not shown how long defendant was in the hospital (he was later released) or that his military service prevented his delivery to the sheriff during the remainder of the sixty-day period fixed by section 13636.

It is generally held that where military service of the accused is offered by the sureties as an excuse for his nonappearance *even at a time when his presence is required by his bail bond,* "it should be shown that proper effort has been made to secure the person of the principal from the military authorities." 6 Am. Jur. 100, 101, section 133. See, also, Briggs v. Commonwealth, 185 Ky. 340, 214 S. W. 975, 8 A. L. R. 363, 370, and annotation 371, 372; Ex parte Moore, 244 Ala. 28, 12 So. 2d 77, 78.

But assuming that appellant was prevented by defendant's military service (which commenced after breach of bond, forfeiture, and judgment) from delivering him to the sheriff during the sixty-day period following the entry of judgment, it does not follow that she was thereby prevented from performing the obligation of her bond. Section 13636, under which appellant's motion was filed, is for the benefit of the surety, and the surrender or delivery of a defendant is merely a condition to the relief which may be granted thereunder. State v. Hamilton, 196 Iowa 998, 1002, 192 N. W. 838; State v. Arioso, 207 Iowa 1109, 224 N. W. 56. Had defendant been delivered to the sheriff, the granting of relief under section 13636 would still be discretionary with the trial court. State v. Thomason, 226 Iowa 1057, 1062, 1063, 285 N. W. 636.

No excuse appears for appellant's failure to produce defendant for trial in accordance with the obligation of her bond, except that she did not know his whereabouts. This, of course, is insufficient. The theory of the law is that the principal defendant is in the custody of the sureties on his bail bond, who are his jailers and assume the responsibility for his appear-

ance at the time and for the purpose fixed in the bond. The sureties are bound to know the defendant's whereabouts. State v. Arioso, 207 Iowa 1109, 1113, 224 N. W. 56; State v. Hamilton, 196 Iowa 998, 1001, 192 N. W. 838; State v. Sandy, 138 Iowa 580, 116 N. W. 599; State v. Zimmerman, 112 Iowa 5, 83 N. W. 720; 6 Am. Jur. 85, section 93; 8 C. J. S. 50, section 31. To sustain appellant's contention here would be to hold that she is entitled to relief to which she would not have been entitled had defendant been delivered to the sheriff within the sixty-day period following the entry of judgment.

In State v. Scott, 20 Iowa 63, 66, 67, a principal on a bail bond, who had failed to appear for arraignment, later volunteered for military service. This fact was offered by the surety as a reason for being relieved of his obligation under an earlier statute quite similar to section 13636 which permitted the court in its discretion to grant relief against the forfeiture. It was held the surety was entitled to no relief. The court, through Dillon, J., said:

"But however this might be, it is clear that, *after forfeiture,* these facts would not discharge the liability upon the recognizance. * * *

"Inasmuch, therefore, as the surety *after* forfeiture cannot, as a matter of *right,* be discharged on surrendering the principal, it logically and necessarily follows, that the mere fact that he was prevented, by whatever cause, from making such surrender, will not exonerate him."

The only decision called to our attention (and we find no other after a careful search) under section 103(3) of the Relief Act, which bears on the question now before us, is Ex parte Moore, 244 Ala. 28, 30, 12 So. 2d 77, 78. While that decision turns largely on a question of procedure, the following from the opinion is in line with the conclusion we have reached:

"The 1942 Act was approved October 6, 1942; the conditional judgment here was rendered September 21, 1942.

"The status at that time was as discussed in Briggs v. Commonwealth, 185 Ky. 340, 214 S. W. 975, 8 A. L. R. 363. It was there recognized as sound that if the defendant in a

criminal case is drawn into the military service under the Selective Service Act, and was thereby prevented from appearing to answer the criminal charge, a final judgment of forfeiture should not be rendered against the sureties on his bail bond, but that if he was located at a place accessible to the trial, and would have been granted a pass on request to enable him to attend the trial, the final judgment of forfeiture should not be set aside.

''The Act of 1942 seems to embody that principle in express language.

''In any event military service must prevent the bondsmen from enforcing the attendance of the principal.' This does not follow from the mere circumstance of military service. The service should prevent his attendance on the trial under that act, as well as before it. * * * He [trial judge] evidently did not find that defendant could not have appeared to answer the charge on account of military service. * * * But if he is in the service, and a pass is refused by the military authorities, or he is out of the country or so situated otherwise by reason of such service that he cannot reach the trial, the sureties may be in position to claim an inability to produce him to stand the trial.''—Affirmed.

All JUSTICES concur.