STATE OF IOWA, appellee, v. GEORGE PAUL SHELL et al., appellants.

No. 47809.

(Reported in 45 N.W.2d 851)

FEBRUARY 6, 1951.

John N. Hartley, of Winterset, Edwin J. Frisk and Parrish, Guthrie, Colflesh & O'Brien, all of Des Moines, for appellants.

Robert O. Frederick, County Attorney, of Winterset, for appellee.

GARFIELD, J.—We think the principal question on this appeal is whether the trial court abused its discretion in entering judgment against appellant sureties on a bail bond.

On March 30, 1949, in Madison County one Shell was charged by county attorney's information with operating a motor vehicle while intoxicated, third offense. He entered a plea of not guilty. Bail was fixed at $3000. On April 1 a bail bond in such amount was filed, signed by appellants Norton and Fowler as sureties.

On May 3 the criminal case against Shell was assigned for trial on May 9 at 10 a.m., Mr. Howard, Shell's attorney, was advised of the assignment and a copy thereof was mailed Howard. On May 6 the presiding judge told Mr. Howard by telephone the case would be tried May 9. Neither Shell nor his attorney, though duly called, appeared on the day set for trial. Jurors were present to hear the case.

The court then (May 9) found Shell in default for failure to appear for trial, ordered his bail forfeited (see section 766.1, Code, 1946), and directed the sheriff to serve ten days written

262

notice on the sureties to appear on May 23 and show cause, if any, why judgment should not be entered for the amount of such bail. (See Code section 766.2.) Such notice was served on Norton and Fowler. They filed answer on May 23 stating they were trying to locate Shell and bring him before the court and had obtained information May 22 they believed would enable them to do so. They asked that final hearing and entry of judgment of forfeiture be continued thirty days. The court then set the case for hearing on June 1 (see section 766.3).

On May 24 Shell was delivered into the custody of the sheriff by Norton. On June 1 the sureties filed "Resistance to Forfeiture of Bond" alleging they had located Shell, surrendered him to the sheriff and he is now confined in the county jail awaiting action by the court.

The county attorney, the sureties' attorney Mr. Hartley, and Shell appeared at the hearing on June 1. Upon examination by the county attorney Shell testified his wife arranged for the bond, he never talked to the bondsmen, his wife's folks lived in Spirit Lake, he gave his attorney Mr. Howard the address, he and his family moved to Spirit Lake with his wife's folks, on April 28 his mother wrote him his bondsmen had called his sister and said to get in touch with the county attorney of Madison County, his wife called the county attorney and told Shell on April 29 he was supposed to appear on May 3, he then called his attorney Mr. Howard and told him he was supposed to appear May 3, Howard said, "Well no, I will go down there, you sit tight where you are and I will get hold of you when I want you", he never heard from Howard till he came to Madison County shortly before the hearing, he did not know the sureties knew Mr. Howard was his attorney, Howard knew Shell's whereabouts all the time from April 1 to May 24.

At the conclusion of the hearing on June 1 the court found judgment should be entered on the bond and observed that from the record it would seem the failure of Shell to appear was the fault of his attorney Mr. Howard but that would not excuse the sureties. Accordingly on June 4 judgment was entered against the sureties for the amount of the bail.

On June 9 Shell appeared in person, said he had discharged Mr. Howard, did not desire an attorney, and wanted to change

his plea to guilty. Such plea was entered and Shell was sentenced to a penitentiary term not to exceed three years. On June 10 he was delivered to the penitentiary.

On June 9 the sureties filed application to set aside the judgment of June 4, alleging they had delivered Shell into the sheriff's custody, he had pleaded guilty and been sentenced and they were not advised by Shell's attorney his trial had been set for May 9.

A year later at the hearing on the application to set aside judgment each appellant testified he would not have signed the bond had he known Mr. Howard was Shell's attorney—Norton added "at any price." Norton admitted he did not ask if Shell had an attorney. Fowler made virtually the same admission. Fowler relied on the fact Norton had signed a bail bond for Shell on a prior occasion. Neither appellant seems to have requested definite information as to where Shell could be located nor asked to be notified of the time set for his trial. Neither talked to Shell at all. His wife and sister arranged for the bond. Norton said he knew the condition of the bond that Shell was to appear for trial. A Des Moines detective employed by Norton and the sheriff at Spirit Lake located Shell there the evening before he was surrendered to the Madison County sheriff on May 24.

Appellants and Mr. Howard live in Des Moines, about thirty-five miles from Winterset, Madison County seat. Appellants seem to be experienced in furnishing bail for hire and were paid for signing this bond.

Following this last hearing the trial court refused to set aside the judgment of June 4, 1949, and the sureties have appealed.

I. Appellants contend their application to set aside the judgment was authorized by Code section 766.6 which reads: "Such judgment shall never be set aside unless, within sixty days from the date thereof, the defendant shall voluntarily surrender himself to the sheriff * * * or his bondsmen shall * * * deliver him to the custody of the sheriff * * * whereupon the court may, upon application, set aside the judgment * * *."

At the conclusion of the last hearing the trial court indicated, though not in the final judgment, the quoted section does not necessarily apply here because Shell had been delivered into

the custody of the sheriff before the hearing on June 1, 1949 (appellants then so alleged), and the judgment entered on June 4, and nothing important was shown at the final hearing that had not been presented at the earlier one and decided by the original judgment.

Appellants argue this view of the trial court is erroneous since statutes imposing forfeitures are strictly construed against the forfeiture, liberally toward those opposing it (Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699, 703, and citations), and because we have sometimes said the purpose of the criminal law is to secure the punishment of criminals, not to have the state profit financially by the forfeiture of bail. (State v. Thomason, 226 Iowa 1057, 1066, 285 N.W. 636, and citations.)

It seems section 766.6 quoted above was intended to apply where the defendant surrenders himself or is surrendered by his bondsmen within sixty days after the entry of judgment provided for by section 766.3. (Essential provisions of all these Code sections are quoted in State v. Benedict, 234 Iowa 1178, 1181, 15 N.W.2d 248, 250, and need not be set out again here.)

■■ Where the principal is surrendered before the hearing which precedes the judgment provided for by 766.3, the sureties then so allege and appear at that hearing and present their contentions in resistance to the forfeiture, it surely is not the purpose of 766.6 to provide for a rehearing of the matters previously heard. Section 766.3 states, "The judgment * * * shall have the same force and effect as any other judgment * * *." In State v. Thomason, supra, 226 Iowa 1057, 1062, 1063, 285 N.W. 636, we point out that the court has the same discretion to enter or not enter judgment under 766.3 where the defendant has then been surrendered as it has to set aside such a judgment under section 766.6 where the surrender is after judgment.

In their reply brief appellants argue that appellee never contended in the trial court, by pleading or otherwise, section 766.6 did not apply nor that the court could not set aside the judgment of forfeiture. Appellants rely on the familiar rule that matters not presented by pleading or otherwise in the trial court will not be considered on appeal.

It is true appellee's answer to appellants' application to set aside judgment does not clearly raise the question that sec-

tion 766.6 is inapplicable. Nor do we find such question otherwise raised in the trial court except by the court itself at the conclusion of the final hearing. Appellants' application expressly states it was made pursuant to 766.6.

We have concluded therefore that the evidence at the final hearing to set aside judgment, as well as at the hearing on June 1, 1949, should be considered in deciding whether there was an abuse of discretion in the trial court. We are not to be understood as holding however that where a defendant is surrendered and the bondsmen are fully heard before judgment is entered under section 766.3, the bondsmen are entitled under 766.6 to a rehearing of the matters previously considered and determined.

II. We are agreed there was no abuse of discretion in entering judgment against appellants nor in refusing to set it aside.

The bond in the form suggested in Code section 763.8 (see State v. Radcliffe, 242 Iowa 572, 577, 44 N.W.2d 646, 649) provides: "We * * * hereby undertake that * * * Shell shall appear and answer said information, and submit to the orders and judgment of said court, and not depart without leave of same, or, if he fails to perform either of these conditions, he will pay to the state of Iowa $3000."

The very essence of the obligation of sureties on a bail bond is that they will produce the accused in open court when his presence is required, in accordance with the terms of the bond. State v. Hamilton, 196 Iowa 998, 1002, 192 N.W. 838, 839; State v. Arioso, 207 Iowa 1109, 1113, 224 N.W. 56; State v. Clark, 234 Iowa 338, 341, 11 N.W.2d 722, 724; State v. Benedict, 234 Iowa 1178, 1182, 15 N.W.2d 248, 250.

By executing the bond appellants secured Shell's release from the sheriff's custody and assumed the responsibility for his appearance in court when required. In theory Shell was in appellants' custody, they were his jailers and bound to have him as much in the power of the court as if he were still in the sheriff's custody. Appellants were bound to know Shell's whereabouts. See authorities last above, also State v. Radcliffe, supra, 242 Iowa 572, 577, 44 N.W.2d 646, 649; State v. Sandy, 138 Iowa 580, 116 N.W. 599; State v. Merrihew, 47 Iowa 112, 115, 29 Am. Rep. 464; annotation 4 A. L. R.2d 440, 441.

■ Delivery of Shell to the sheriff's custody on May 24, fifteen days after the time set for his trial, did not of itself entitle appellants to relief. The matter was still left to the trial court's sound discretion. State v. Benedict, supra, 234 Iowa 1178, 1183, 1184, 15 N.W.2d 248, 251, and citations. See also annotation 84 A. L. R. 420, 424, 436.

■ ■ Under the authorities heretofore cited forfeiture of bail may be avoided only where bondsmen show some reasonable excuse for failure to produce defendant in accordance with the obligation of their bond. No excuse is shown here except that appellants did not know Shell's whereabouts. This, of course, is insufficient. As stated, they were bound to know where he was. Neither the prosecution nor the court was under a duty to notify appellants of the time for Shell's trial. If they desired such information they doubtless could have obtained it. This they made no effort to do.

Without necessarily committing ourselves thereto we quote this from annotation 4 A. L. R.2d 440, 441: "* * * in general it has been said that a default in appearance will be excused only by an act of God, an act of the law, an act of the obligee, or an act of the public enemy."

Appellants argue the trial court abused its discretion because, they say, it exhibited animosity toward Mr. Howard, Shell's attorney, and sought to punish appellants for Howard's failure to appear with his client for trial. As stated, at the conclusion of the hearing on June 1, 1949, the trial court observed that from the record it would seem Shell's failure to appear was the fault of Mr. Howard but this would not excuse the sureties. At the end of the final hearing on the application to set aside judgment the trial court indicated irritation at Mr. Howard's conduct and disapproval of it.

■ However, appellants themselves exhibited a clear lack of admiration for Mr. Howard when each testified at this last hearing he would not have signed the bond had he known who Shell's attorney was. (As stated, neither appellant attempted to find out who the attorney was.) It is not argued the trial court was not justified in its criticism of Mr. Howard. We think it does not appear judgment was entered or confirmed against the sureties in order to punish them for any conduct of Mr. Howard.

We agree with the trial court any failure of Mr. Howard to have Shell appear for trial is insufficient basis for relief to appellants.

Bruntlett v. Carroll County (1922), 193 Iowa 875, 878, 188 N.W. 142, cited by appellants, was decided under section 5519, Code of 1897, which made mandatory the exoneration of bail and discharge of the sureties "if the defendant is produced in execution of a judgment of imprisonment, or commitment for a fine * * *." Section 5519 was enacted as a substitute for section 4600, Code of 1873, by which the court had discretion to remit all or part of the sum specified in the bond. In 1923 section 5519 was repealed by chapter 219, Acts of the Fortieth General Assembly, the statutes now in effect, under which relief from forfeiture of bail again became discretionary with the court. In this connection see State v. Hamilton, supra, 196 Iowa 998, 192 N.W. 838; State v. Robinson, 205 Iowa 1055, 1060, 218 N.W. 918.

Statutes in other jurisdictions generally leave to the court's sound discretion the granting of relief to sureties on a forfeited bail bond. Annotation 84 A. L. R. 420, 424.

In State v. Thomason, supra, 226 Iowa 1057, 1063, 285 N.W. 636, also cited by appellants, the trial court granted relief to the surety, we held no abuse of discretion was shown and affirmed the decision. The Thomason opinion is explained in State v. Clark, supra, 234 Iowa 338, 343, 11 N.W.2d 722, 725. Our conclusion here is not inconsistent with the Thomason case.— Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.