**UNITED STATES ex rel. HEIKKINEN v. GORDON.**

No. 14300.

United States Court of Appeals
Eighth Circuit
June 20, 1951.

Carol King, New York City, for appel·lant.

Howard H. Gelb, Asst. U. S. Atty., St. Paul, Minn. (C. U. Landrum, U. S. Atty. and Ben C. Marien, Immigration and Naturalization Service, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from an order of the trial court discharging an order to show cause and denying a writ of habeas corpus. Appellant Knut Einar Heikkinen, an alien, was born in Finland in 1890. In 1910 he

went to Canada where he continued to live until he entered the United States in 1916. At the time of leaving Canada he was a citizen of that country. While living in this country he worked as a builder and as editor of various Finnish language papers. He married and has three children, all born in this country. Two daughters are married. At the time of the hearing in the trial court he was associate editor of a Finnish newspaper. His wife left him in 1932 and he followed her to Russia seeking reconciliation. He testified that he tried to live with his wife from 1932 to 1935, while they were in Russia. In 1935 he returned to the United States. While in Russia he was in charge of the transport of a Soviet building trust for one and a half years, being in charge of twenty to thirty people and twelve hauling trucks. During the remaining period of his sojourn in Russia he was a proofreader in a state publishing house. In leaving the United States in 1932 for Russia, and in returning in 1935, he did not obtain official passports. He was a member of the Communist Party from 1923 to 1930 and has attended Communist Party functions without membership subsequent to that date. Since returning to the United States he has spent fifteen years as editor of the Finnish newspaper, Eteepain. This newspaper plant was located in the same building as the National Headquarters of the Communist Party. Appellant was also editor of Tovari, a Socialist newspaper, and within the past two years has been a member of the Executive Committee of the International Workers' Order. He has never been convicted of any crime.

On November 21, 1949, appellant was arrested on a warrant issued by the Immigration and Naturalization Service. The warrant charged that appellant was subject to deportation for the reasons: (1) that he violated the Immigration Act of May 26, 1924, 8 U.S.C.A. § 201 et seq., in that at the time of entry he was not in possession of a valid immigration visa; (2) that he violated the Act of October 16, 1918, 8 U.S.C.A. § 137, in that he was at the time of entry and thereafter an alien who was a member of an organization which advises, advocates and teaches the overthrow by force and vio-lence of the Government of the United States; and (3) that he violated the Act of October 16, 1918, in that he was at the time of entry and thereafter an alien who was a member of an organization which writes, circulates, distributes, prints, publishes and displays written and printed matter advocating the overthrow by force and violence of the Government of the United States. This warrant authorized appellant's release on bail in the sum of $10,000, but following his arrest he was released on reduced bail in the sum of $5,000.

On or about October 23, 1950, appellant was rearrested and detained by Harry Gordon, Officer in Charge of the Immigration and Naturalization Service, Department of Justice. This rearrest without bail was made pursuant to instructions by telephone and telegram from the Attorney General. Following his rearrest he filed petition for writ of habeas corpus, alleging that his rearrest had been purportedly effected under and by virtue of Section 23(a) of the Internal Security Act of 1950, 8 U.S.C.A. § 156(a); that at the time of his rearrest he was out on bail; that deportation proceedings have been instituted against him but that proceedings have neither been held nor completed; that he is advised and believes that the only reason for his rearrest is the enactment of the Internal Security Act of 1950, particularly Section 23 (a) thereof, which among other things provides that, "Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General, or (3) be released on conditional parole"; that this provision does not authorize such an arrest; that his rearrest is arbitrary and an abuse of discretion on the part of the Attorney General and those acting pursuant to his request. The petition contained other allegations going to the truth of the charges contained in the warrant not here deemed material. The return admitted all the allegations of fact alleged in the petition but not the conclusions asserted therein, and

we think there is no dispute as to the primary or basic facts pertinent to the issues presented.

At the hearing conducted at Duluth, Minnesota, October 30, 1950, there was offered in evidence on behalf of appellee copies of a telegram sent by the Central Office of Immigration and Naturalization Service and of the warrant of arrest. Mr. Gordon testified that he had telephone instructions from the Chief of the Investigating Division in New York, where the 1949 warrant of arrest reposed, to arrest. Judge Donovan denied the application "without prejudice, however, to relators reopening for the purpose of presenting anything additional * * *." Motion for rehearing was granted and on November 10, 1950, hearing was had before three District Judges. The petition for writ of habeas corpus was again denied and this appeal followed. On application appellant was admitted to bail in the sum of $2500.00, pending appeal.

In seeking reversal appellant contends: (1) that the Attorney General abused his discretion in rearresting appellant and thereafter holding him without bail; (2) that appellant's rearrest was not within the terms of the statute; (3) that appellant was rearrested and until his release on appeal was held in custody without legal process; (4) that the court permitted the examination of appellant to go too far afield.

 There is no dispute as to the basic facts. They were either admitted by the pleadings or established by uncontradicted evidence. The rules and rights of the parties in criminal and civil bail are similar in many respects. The accused or principal in either case is released from custody of the law and placed in the custody of keepers of his own selection, and it is said that the object of bail is to relieve the accused of imprisonment and the state of the burden of keeping him pending trial or hearing and at the same time to secure the appearance of the accused at the trial or hearing. The denial of bail is not intended as punishment and bail will ordinarily be granted unless the enlargement of the accused will be a menace to the public security. No conduct on behalf of the appellant occurred subsequent to his original arrest and enlargement on bail which warranted the cancellation of his bail and his rearrest. The only thing occurring during that time was the enactment on September 23, 1950, of the Internal Security Act above referred to.

 It is a general rule that an order granting bail after hearing is final and res judicata as to all questions except the amount. Taylor v. Taintor, 16 Wall. 366, 21 L.Ed. 287; State v. Benedict, Ia., 234 Iowa 1178, 15 N.W.2d 248; Ex parte Marshall, Ariz., 38 Ariz. 424, 300 P. 1011; 6 Am.Juris., p. 100. Ordinarily in criminal cases, where one has been released on bail he can not be rearrested in the same jurisdiction on the same charge on which he was originally arrested. In a proceeding of this character, if subsequently to the enlargement of the accused on bail he had been guilty of conduct menacing the public security, or if evidence were discovered subsequent to the granting of bail indicating that to enlarge him would be a menace to the security of society, then doubtless, his bail might properly be revoked and he might be rearrested. In Zydok v. Butterfield, etc., 6 Cir., 187 F.2d 802, 803, the Sixth Circuit considered a case very similar to the case at bar. In that case the accused was, before his original arrest, a member of the Communist Party, and was financial secretary of the Hamtramck Division of the Communist Party of Michigan, and as such secretary he assisted in the collection of funds to be used in the defense of the Communist Party leaders who were tried and convicted in New York under the Smith Act, 18 U.S.C. § 2385, of conspiring to advocate the overthrow of the Government of the United States. In the course of the opinion by Chief Judge Hicks it is among other things said: "Before his second arrest and while he was at large on bail he reported regularly to the Department of Immigration and Naturalization Service. The record fails to disclose that he has violated any law or that he is engaged or is likely to engage in, any subversive activities. The fact that he assisted in collecting funds for the aid of the Communist defendants being tried under the Smith Act can hardly be regarded as an objection to the allowance of bail, for these defendants

themselves were allowed bail after the affirmance of their convictions and even during the pendency of their appeals. Williamson v. United States, 2 Cir., 184 F.2d 280 * * *."

Again the court said: "* * * While on the witness stand appellant claimed his conditional privilege against self-incrimination and upon that ground declined to testify touching his Communistic relations. We think that his refusal to so testify should not have operated against him. Blau v. United States, 340 U.S. 159, 71 S.Ct. 223.

"We think that a fair consideration of the factors above set out in their aggregate require that appellant should have been granted bail in some reasonable amount. This view is more nearly in accordance with the spirit of our institutions as it relates even to those who seek protection from the laws which they incongruously seek to destroy."

■ The court held that there had been an abuse of discretion and that the appellant in that case was entitled to bail. It is now well established that mere Communist party membership does not justify detention without bail. United States ex rel. Potash v. District Director, etc., 2 Cir., 169 F.2d 747, 751; United States ex rel. Pirinsky v. Shaughnessy, 2 Cir., 177 F.2d 708; Williamson v. United States, 2 Cir., 184 F. 2d 280. In United States ex rel. Potash v. District Director, supra, the opinion in which was written by Judge Augustus Hand, it is among other things said: "The foregoing decisions and also, as it seems to us, the general spirit of our institutions make it improbable that Congress intended to give the Attorney General unlimited power over the admission to bail of aliens against whom deportation proceedings are brought. We think that it requires more than the general grant of power to fix bail in Section 156 to exempt the Attorney General from all control in the exercise of that function even if he should be shown to have acted in an arbitrary manner. This interpretation is particularly indicated in such a situation as the present where personal liberty is involved and there has been no determination that the alien is deportable.

Prior to the passage by Congress in 1907 of the act empowering the administrative official to fix bail, various courts made it a practice to grant bail to aliens during deportation hearings."

In a concurring opinion, Judge Clark among other things said: "* * * Several of these relators now appear to be at large upon substantial, though not unusual, bail upon criminal charges. If such bail is adequate there, it does seem an anomaly to require absolute imprisonment upon non-criminal charges."

In United States ex rel. Pirinsky v. Shaughnessy, supra [177 F.2d 709], the court among other things said: "But the long administrative record, in evidence below, fails to show any immediate or particular danger to be expected from this individual, beyond other members of the Communist Party; and the administrative findings, filed since this proceeding was commenced, set forth no other ground than such party membership for his deportation. Unless, therefore, the Immigration Service intends to confine all alien Communists indefinitely during lengthy deportation proceedings, there is nothing in the record to justify the singling out of this individual for unusual treatment."

In Bridges v. United States, 9 Cir., 184 F.2d 881, 886, it is said: "The whole matter appears finally to boil down to the contention that Bridges is a proven Communist in that he was found guilty of perjury for swearing the contrary in his naturalization proceeding; and that the subsequent development of the Korean crisis renders him per se a menace to the public security. hence the district court was right in revoking his bail and ordering him confined.

"The conclusion, if we may say so, is as startling as it is novel."

■ It is worthy of note that while out on bond appellant's conduct did not differ from his conduct before his original arrest and the Attorney General did not deem such conduct inconsistent with his enlargement on bail. He has apparently observed all the conditions of the bail bond on which he was released and has at all times been available when and if required by the gov-

ernment and certainly there is nothing in this record to indicate that he will not continue to be so available in the future.

Appellee refers to the so-called second opinion in Carlson v. Landon, 9 Cir., 187 F. 2d 991. In that case application for certiorari has been filed and petitioners applied to the Supreme Court for bail pending the disposition of the petition. The Supreme Court ordered that the petitioners be released from custody upon furnishing of bonds each in the amount of $5,000. Having in mind that the question involved was whether or not the appellants in that case were entitled to be enlarged on bail, the order of the Supreme Court is quite persuasive that the enlargement of appellant on bail would not be prejudicial to the security of the public.

Appellee relies strongly on the per curiam opinion of the Second Circuit in United States ex rel. De Geronimi v. Shaughnessy, 2 Cir., 187 F.2d 896, 897. It is first to be noted that this opinion does not purport to modify the views of that court as expressed in United States ex rel. Potash v. Director, supra, and the facts distinguish it very readily from the case at bar. In the De Geronimi case the rearrest was "on the basis of information subsequently obtained." The opinion does not set out what this information consisted of but it is recited that "The return states ample ground for revoking the bail as a matter of discretion", and it is also recited that "no proof was offered to contradict the allegations of the return." This opinion does not throw much light on the situation because it does not disclose what grounds were stated in the return but it does appear that they were based on information obtained subsequent to the relator's enlargement on bail. De Geronimi was a deserting seaman who had resided in this country less than a year and it may be inferred that there was likelihood that he would abscond.

In this connection it is observed that the Supreme Court in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 631, held that the organization known as the International Workers' Order can no longer be considered a subversive organization. In the instant case appellee urges as a circumstance warranting the denial of bail by the Attorney General that appellant within the past two years has been a member of the Executive Committee of the International Workers' Order. In the opinion in that case it is among other things said: "The doctrine of administrative construction never has been carried so far as to permit administrative discretion to run riot. If applied to this case and compounded with the assumption that the President's Executive Order was drafted for him by his Attorney General, the conclusion would rest upon the premise that the Attorney General has attempted to delegate to himself the power to act arbitrarily. We cannot impute such an attempt to the Nation's highest law enforcement officer any more than we can to its President."

There is nothing to indicate that if enlarged on bail the appellant would not at all times be available, nor is there any evidence that if so enlarged his enlargement would result in any menace to the public security; in fact, such an argument is completely refuted by the fact that in this case the trial court granted bail during this appeal. This bail has been given and the appellant is at large. This, we think, goes far, if indeed it is not conclusive, to show that the action of the Attorney General in rearresting appellant and refusing to enlarge him on bail is arbitrary and an abuse of discretion. In the words of Judge Clark in his concurring opinion in United States ex rel. Potash v. Director, supra, "If such bail is adequate there, it does seem an anomaly to require absolute imprisonment upon noncriminal charges." Under our system of jurisprudence one may not be condemned without a hearing, nor may he be punished before conviction.

Having reached the conclusion that the Attorney General abused his discretion in rearresting appellant and refusing to enlarge him on bail, we pretermit consideration of the other contentions urged by appellant.

The order dismissing the writ of habeas corpus is reversed and the case remanded to the District Court with directions to proceed in accordance with the views expressed in this opinion.