**STATE of Iowa, Appellee,**

v.

**Roger Hinton, Defendant,**

**Twynette CAIN d/b/a Superbondsman, Surety, Appellant.**

No. 98–1783.

Supreme Court of Iowa.

March 22, 2000.

Gary J. Shea of Shea Law Offices, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Denver Dillard, County Attorney, and Jeffrey Clark, Assistant County Attorney, for appellee.

SNELL, Justice.

This is an appeal by Twynette Cain, doing business as Superbondsman, from the district court's decision forfeiting the appeal bond posted for defendant, Roger Hinton. Cain argues the county jail's policy with regard to the recommitment of prisoners was illegal and frustrated her attempt to surrender defendant in a timely manner. We agree. The decision of the district court is reversed. We remand for appropriate proceedings.

## I. Background Facts and Proceedings

On March 15, 1996, defendant, Roger Hinton, was sentenced to an indeterminate fifteen-year term of imprisonment for second-degree theft as an habitual offender. The court of appeals affirmed Hinton's conviction, and defendant subsequently filed an application for further review. On May 8, 1997, Twynette Cain, owner of Superbondsman and agent of the Noble Insurance Company, posted Hinton's bail in the amount of $75,000.

Hinton's application for further review was unsuccessful, and on Friday, June 6, 1997, the Iowa Court of Appeals issued procedendo. The following night Hinton was arrested on new charges stemming from the operation of a motor vehicle, including operating while intoxicated. Defendant was arraigned in the Linn County courthouse on Sunday morning, June 8. Bill Benefield, a Superbondsman employee, happened to be present in the courthouse and saw the arraignment proceedings on closed-circuit television. At that time, Benefield did not know Superbondsman had posted the $75,000 appeal bond for Hinton. Benefield heard the judge set the bond on the new charges at $5,000.

Benefield went back to the office of Superbondsman and told Tracy Andrew, the office manager, of these events. They decided to tell Cain that Hinton was in custody at the jail.

Around 1:00 p.m., Benefield and Andrew called Cain. Cain promptly instructed

Benefield to revoke Hinton's bond first thing Monday morning. Cain later testified that she would have effectuated the revocation that Sunday, but could not do so without a certified copy of the bond instrument. This is because at that time, the Linn County jail followed a policy by which it refused to recommit defendants without this document. The clerk of court's office, the office charged with the responsibility of certifying bond instruments, is not open on evenings and weekends.

Superbondsman was familiar with this policy and had encountered difficulty when attempting to surrender prisoners in the past. Cain had in fact previously complained of the practice only to be told that her privileges at the Linn County facility would be revoked if she did not comply.

Nevertheless, Benefield called the jail on Sunday afternoon to confirm Hinton was still in custody, and to inform the jailer of his intent. When Benefield phoned again on Monday morning, he was told that Hinton had already been released by posting a new bond.

That same morning, June 9, at 11:44 a.m., the procedendo was received and file-stamped by the Linn County clerk's office. On July 3, the district court ordered Hinton to surrender to serve his sentence, or for his surety to surrender him within ten days. On July 11, Superbondsman applied for an order revoking Hinton's appeal bond and exonerating Superbondsman. When Hinton failed to submit himself into custody, the court ordered the forfeiture of his appeal bond. In accordance with Iowa Code section 811.6 (1997), the sheriff was instructed to give Hinton and his sureties ten days notice to appear and show cause why judgment should not be entered for the amount of the bond.

On July 21, Superbondsman appealed and objected to the forfeiture. A combined hearing on the motions, applications and appeals was not held until September 2, 1997. At that time Cain delineated her efforts to locate Hinton, and objected to the jail's procedures regarding the surrender of prisoners on weekends.

On October 4, Hinton was captured by Davis County sheriff's officers after a gun battle in which Hinton sustained numerous wounds. He was taken to University Hospitals in Iowa City, where he remained unguarded and in serious condition. Representatives of Superbondsman arrived at the hospital three days later and formally requested the Davis County sheriff's office to accept delivery.

On October 13, the court rejected Superbondsman's arguments against forfeiture. Another hearing was held on February 25, 1998, whereupon the court entered judgment on the bond in the amount of $60,000.

Superbondsman now appeals on numerous grounds, the first of which is that the policy of the Linn County jail was illegal and was enforced to appellant's detriment. We agree with Superbondsman's first contention and therefore decline to address the other issues presented.

## II. Scope of Review

■ The decision to enter judgment for the amount of bail in a forfeiture proceeding is discretionary with the court. *State v. Costello*, 489 N.W.2d 735, 738 (Iowa 1992); *State v. Shell*, 242 Iowa 260, 264, 45 N.W.2d 851, 854 (1951). Therefore our review is for abuse of discretion. *Costello*, 489 N.W.2d at 738. This standard is breached when a district court exercises its discretion on grounds that are clearly untenable, or to an extent clearly unreasonable. *State v. Greene*, 592 N.W.2d 24, 27 (Iowa 1999).

## III. Analysis

■ Superbondsman alleges the policy of the jail, whereby a surety was not permitted to surrender a defendant without a certified copy of the bond, was contrary to Iowa Code section 811.8. Superbondsman argues that the jail's failure to abide by the strictures of the statute frustrated its

attempts to perform its obligation, thereby relieving it of any future responsibility for Hinton's nonappearance. Iowa Code section 811.8 provides as follows:

1. At any time before the forfeiture of the undertaking, the surety may surrender the defendant, or the defendant may surrender, to the officer to whose custody the defendant was committed at the time of giving bail, and such officer shall detain the defendant as upon a commitment and must, upon such surrender and the receipt of a certified copy of the undertaking of bail, acknowledge the surrender of a certificate in writing.

2. Upon the filing of the undertaking, and the certificate of the officer, or the certificate of the officer alone if money has been deposited instead of bail, the court or clerk shall immediately order return of the money deposited to the person who deposited the same, or order an exoneration of the surety.

3. For the purpose of surrendering the defendant, the surety, at any time before finally charged and at any place within the state, may arrest the defendant, or, by a written authority endorsed on a certified copy of the undertaking, may empower any person of suitable age and discretion to do so.

The State concedes the jail's policy violated section 811.8. Moreover, evidence at the forfeiture hearings indicates jail personnel knew, or should have known, the policy was illegal. In October of 1993, an Assistant Linn County Attorney contacted the jail via e-mail to inform authorities that they were required to accept the surrender of prisoners at any time of the day or night, with or without a certified copy of the bond instrument. Michael Carr, the Linn County Jail Administrator, testified he was unaware of the communique until August of 1997, at which point the policy was amended.

Nevertheless, the State argues that the jail's violation of section 811.8 did not make it impossible for Superbondsman to perform its obligations. This point is not in serious dispute. Superbondsman could have posted guards outside the jail, or have maintained a certified copy of the bond instrument on file. More importantly, Superbondsman had approximately thirty-five days between June 9 and July 13, in which to surrender defendant and retain its bond. The real question, however, is whether the jail's policy should serve as an excuse for Superbondsman's failure to effect a surrender of Hinton at the jail on Sunday prior to his release on bond on the new charges.

Several well-established principles have been set forth to guide us when reviewing forfeiture proceedings. In *Costello*, we noted that

[a] court admits a defendant to bail in order to assure his appearance in court. In assuming the position of bail the surety becomes obligated to produce the accused in open court when his presence is required. Stated otherwise, when the State releases a defendant from confinement it commits him to the exclusive custody of his surety, who becomes "the jailer of his own choosing." If the surety fails to produce its principal at the appointed time, a judgment shall be entered by the court.

*Costello*, 489 N.W.2d at 737–38 (quoting *State v. Zylstra*, 263 N.W.2d 529, 531 (Iowa 1978)).

Forfeiture and judgment on the bond may be avoided when the surety shows some reasonable excuse for failing to produce the defendant. *Id.* at 738; *Shell*, 242 Iowa at 266, 45 N.W.2d at 854. When a satisfactory explanation for the defendant's failure to appear has been established, the court may refuse to enter judgment and may set aside the forfeiture. *Costello*, 489 N.W.2d at 738; *State v. Thomason*, 226 Iowa 1057, 1062–63, 285 N.W. 636, 638–39 (1939).

To that end it has been noted that the proceedings for forfeiture of bail

and judgment are civil actions, which may only be enforced in rigid compliance with the statutes. *Costello,* 489 N.W.2d at 738; *Zylstra,* 263 N.W.2d at 531. These statutes are strictly construed against forfeiture and liberally toward those opposing it. *Shell,* 242 Iowa at 264, 45 N.W.2d at 853; *State v. Dodd,* 346 N.W.2d 42, 42 (Iowa App.1984).

Superbondsman avers that had the State complied with section 811.8, Hinton would have been returned to custody on Sunday, June 8, 1997, thereby eliminating the need for any further proceedings. The State, however, contends the record is inadequate to determine whether Hinton was still in custody when Benefield phoned the jail on Sunday afternoon. The State asserts that if Hinton had already been released by the time Benefield called, the jail's illegal procedure with respect to section 811.8 would have been irrelevant.

Although we cannot confirm Hinton was still in custody when Superbondsman's agent contacted the jail that afternoon, our record of the conversation indicates that this was likely so. Presumably, if Hinton had already been released when Benefield called and expressed his intention to revoke defendant's bail, the jailer would have indicated as much.

In construing the statute, the facts, and the circumstances attendant to this case liberally toward those opposing forfeiture, we are led to conclude that Hinton would have been recommitted on Sunday June 8 had the jail acted in accordance with Iowa Code section 811.8. Anything that took place subsequent to the events of that day is of no legal consequence. The judgment of the district court is reversed. This case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

All justices concur except CARTER, J., who takes no part.